## UNITED STATES v. GOLDSMITH et al.
### No. 316.

Circuit Court of Appeals, Second Circuit.

Aug. 3, 1943.

Harold L. Turk, of Brooklyn, N. Y., for appellants.

Harold M. Kennedy, U. S. Atty, of Brooklyn, N. Y. (Vine H. Smith, Asst. U. S. Atty, of Brooklyn, N. Y., of counsel), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The individual defendant, Nathan Goldsmith, and the corporation of which he is president and treasurer were both found guilty of violating § 80 of Title 18, U.S. C.A., which makes it a crime knowingly and willfully to make any false statements in any matter within the jurisdiction of any department or agency of the United States. The indictment was in two counts and charged that the defendants falsely stated the number of pounds of sugar they owned in an application for the registration of retailers and wholesalers with the Office of Price Administration and in a similar application for the registration of industrial users of sugar. The alleged purpose of these false statements was that of inducing the O. P. A. to issue sugar purchasing certificates to the defendants.

The applications containing the false statements of the defendants were required

by Rationing Order No. 3, issued on April 21, 1942, by the administrator of the Office of Price Administration pursuant to Pub. Law 421, 77th Cong., 50 U.S.C.A.Appendix § 901 et seq. WPB Directive No. 1, 7 F.R. 562, Supp.Directive No. 1E. This order and the regulations issued thereunder prohibited sugar deliveries on and after April 28, 1942 to industrial users of sugar, or to wholesalers and retailers, unless those receiving the sugar surrendered the proper number of sugar purchasing certificates or stamps.

It is undisputed that Goldsmith, the individual defendant acting for the corporate defendant, signed two such applications, one as an industrial user of sugar and the other as the owner of sugar for sale, and that these applications required, respectively, statements of "Present Inventory (number of pounds of sugar now owned by registering unit)" and "Present Inventory (number of pounds of sugar now owned by registering unit for sale)." Goldsmith declared that the defendants had no sugar as a manufacturer and 4,000 pounds of sugar on hand for sale. It is also undisputed that before the registration date and in the month of April Goldsmith made four contracts for the purchase of 517,000 pounds of sugar and that the payments on these contracts were made by finance agencies which took documents of title in their own names and warehouse receipts to protect their security interest in the sugar. Thus there was available to the defendants on April 28th, in addition to the 4,000 pounds of sugar declared in the applications, 512,000 pounds (5,000 pounds had been lost in transit) stored in warehouses and held as security for the advances made by those who had advanced the funds to pay the sellers from whom the defendants, or one of them, had bought the sugar. Goldsmith testified that he did not include this sugar in "present inventory" because he had already sold 225,-000 pounds to another company and because he had "segregated" 300,000 pounds of it for the manufacture of fondant or icing. There was ample evidence, however, from which the jury could have found that Goldsmith knew that no such sale had been made by April 28th and that the segregation of the sugar, made only in his mind, was but an attempt, born of the exigencies of the trial, to account in some way for a failure to declare sugar he knew should be declared when he reported.

The guilt of both defendants turned upon whether he deliberately and with the knowledge that he should have reported it failed to report sugar which under the law and regulations he was required to disclose. After explaining the burden of proof resting upon the government, the judge made this abundantly clear to the jury by charging that it was " * * * of the essence of the Government's case to establish that these reports which were filed by the defendant Goldsmith for and on behalf of his corporation were not only known to be false by him when he made them out but that he intended by filing such false reports to cover up the fact that there were in the warehouse these 5,120 or 5,170 bags of sugar.

"In other words the intent to violate the law is an essential part of this case. If that intent has not been shown by the evidence, the defendant is entitled to be acquitted; if that intent has been shown by the evidence, then there will be sufficient evidence in the case to justify a conviction." Though defendant was used here in the singular there could have been no doubt in the minds of jurors that both defendants stood alike in that respect and this matter of Goldsmith's will to deceive, or the lack of it, was kept throughout the charge as the decisive factor left to the jury's determination.

Despite this, the defendants on this appeal argue that on the conceded facts of the case they were not the owners of this sugar as a matter of law; that the judgment must therefore be reversed and the indictment dismissed; that the question of ownership was never properly charged; and that the court refused to charge that an acquittal would necessarily result if the jury found that Goldsmith believed the statements he made when he made them even though they were untrue. None of these contentions has merit.

■■ The meaning of "Present Inventory" as used in the applications for the purposes of registration is clear enough. On the applications "Present Inventory" was stated to include all sugar owned by the registering unit and that meaning was further illuminated by Regulation 1407.104 of Rationing Order No. 3, supra. That regulation called for the inclusion of all sugar " * * * in the possession of, or intended to be used by, the registering unit, to which, at the time of registration, the owner of the

registering unit has title or holds documents of title, or which was in transit or stored for delivery to the registering unit * * *" It goes on: "The owner shall be deemed to have title to sugar regardless of the fact that it may have been mortgaged, pledged, or otherwise used as security in a credit transaction, * * *" For the effect of a similar regulation in another situation see City Bank Farmers Trust Co. v. Hoey, 2 Cir., 125 F.2d 577, 599. From this it is apparent that the defendants were the owners of the sugar stored for them in the warehouses, at least for the purposes of registration, and that the security interest which the finance agencies took in the sugar in no way relieved the defendants of their obligation to declare this sugar in their "Present Inventory." Moreover, there was evidence from which the jury could have found that Goldsmith understood this to be the case, and that he at the time in fact treated this sugar as "owned" for the purposes of the applications; merely offsetting by way of deductions to the amount of what he claimed to have "sold" or "segregated" that which he was unwilling to report. He testified, "I understood * * * that it was not a question as to how much sugar I had on the night of the 27th of April, but the question was how much sugar would I have left in my own right for which I can obtain certificates from the trade that I should deliver the sugar to, after I made my deliveries on the last day, before the certificates began." It also appears that Goldsmith called up the War Production Board to ask what sugar he ought to include in the registration. He testified, "I told him the first thing I wanted to know is, sugar sold to others, and not withdrawn, except either they pay in full or give a substantial deposit, be considered a bona fide sale, * * * do I have to report the sugar * * * He told me to this question, he said, the man that owns the sugar, who bought the sugar is the one that has to do the explaining. Once you have made the sale you do not own any more sugar." Thus the jury had evidence to enable it to find that Goldsmith knew that the sugar available to the defendants under the purchases already mentioned was "owned" for the purposes of the applications for registration notwithstanding the fact that it was held as security for the advances made to pay for it. He was, as his own testimony amply shows, making inquiry concerning this sugar the defendants had bought, not to find out whether by such purchase they came within the requirement to include it in their inventory, but was acting as he naturally would, knowing that such purchase did make the sugar so to be included, to find out whether something which he could say had occurred to some of it since the defendants bought it did away with what would otherwise be the requirement to disclose in their applications that they had it available. The testimony given by Goldsmith to support his claim that he had sold 225,000 pounds of sugar to another company before April 28th, and consequently acted on his belief that he need not include it for that reason innocently failed to do so, need not, of course, have been believed by the jury and evidently was not. The deduction he made on the basis of a mere mental segregation was of sugar he was likewise shown to have known should have been reported. The so-called segregation rested, of course, upon too flimsy evidence to have been found as a fact by any intelligent juror though the defendants were, indeed, entitled to have this evidence considered, as it was, on the question of intent.

Nor did the court in its charge to the jury fail to deal properly with the question of the ownership of the sugar, and with the question of knowledge and intent. The court charged that if the defendants contracted to purchase sugar and then borrowed money to complete the purchase they were the owners of the sugar "just exactly as your house is your property, although you have a mortgage on it, * * *." That was, as we have seen, correct for the purposes of making the applications here involved and that is enough so far as error goes on this appeal. Following that the judge again called attention to the matter of intent which was left to the jury as has already been stated. There is, accordingly, no error in this record. The defendants had a fair trial in which they lost on the decisive issues of fact correctly left to the jury and apparently correctly decided.

Judgment affirmed.